Lori LILES, on her own behalf and on behalf of all others similarly situated, Plaintiff,

v.

**AMERICAN CORRECTIVE COUNSELING SERVICES, INC., Defendant.**

No. CIV 4–00–CV–10497.

United States District Court, S.D. Iowa, Central Division.

July 2, 2001.

Steven E. Ort, Bell, Hansen, Ort & Cornell, PC, New London, IA, Wood R. Foster, Jr., Siegel, Brill, Grupner, Duffy & Foster, PA, Minneapolis, MN, for plaintiff.

Brent R. Appel, Dickinson, Mackaman, Tyler & Hagen, Des Moines, IA, Steven L. Serck, Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, Des Moines, IA, for defendant.

### ORDER

LONGSTAFF, Chief Judge.

Before the Court is defendant's motion to dismiss, filed on May 5, 2001. Defendant, American Corrective Counseling Services, Inc. ("ACCS"), claims that there is no longer an actual case or controversy and therefore no subject matter jurisdiction to maintain this action. Plaintiff Lori Liles ("Liles") filed a resistance. Defendant filed a reply, and also submitted a supplement to the motion. Although surreply memoranda are not contemplated by the rules, plaintiff filed a surreply and this Court has considered it. Oral argument was not requested. The motion is fully submitted.

### I. FACTUAL BACKGROUND

The Court's previous Order ruling on defendant's combined motion to dismiss and motion for summary judgment detailed the facts of this case, and therefore only a brief summary will be given here. ACCS is a for-profit business entity that contracts with local prosecutors throughout the country to process claims from merchants related to "bad checks," or checks dishonored by the check writer's bank due to insufficient funds. ACCS mails notices to bad check writers regarding their dishonored checks, and also charges between $75 and $125 for "program fees" under threatened penalty of criminal prosecution. ACCS entered into a contract with the County Attorney of Jefferson County, Iowa in 1999 to establish a "Bad Check Restitution Program" on behalf of the prosecutor. Pursuant to Jefferson County's Bad Check Restitution Program, ACCS receives bad check claims directly from merchants and processes those checks where the writer is subject to criminal prosecution under state law. ACCS is not an agent of the Jefferson County Attorney, and instead operates as an independent contractor.

Plaintiff Lori Liles received an "Official Notice" dated July 7, 2000 stating it was from the "County Attorney Bad Check Restitution Program." The notice declares that "[a] criminal complaint has been received by this office" in connection with a dishonored check in the amount of $42.08 written to Wal–Mart. It also lists the total balance due as $177.08, which includes the $42.08 check, a $10.00 "returned item fee," and a $125.00 "program fee." The notice is not the result of any court process, and the County Attorney had no knowledge of Liles's check. Liles filed this action on September 1, 2000 on her own behalf and on behalf of all others similarly situated. As of the date of this Order, Liles has not filed a separate motion for class certification.

In its Order dated January 12, 2001, this Court dismissed Count II of plaintiff's complaint, alleging common-law abuse of process. The remaining two counts allege violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692o, and the Iowa Debt Collection Practices Act ("IDCPA"), Iowa Code § 537.7101–7103. The Court also struck claims for punitive damages and injunctive relief from the complaint. On April 19, 2001, defendant made the following offer of judgment pursuant to Federal Rule of Civil Procedure 68;[1]

1. **Statutory Damages Pursuant to Federal Fair Debt Collection Practices Act.** Payment to Lori Liles of $1,000 in statutory damages under the Federal

---

1. The rule states, in part: "At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued." Fed.R.Civ.P. 68. If the offer is accepted within ten days, judgment is entered against the defendant. If not accepted, the offer is deemed withdrawn. *Id.*

Fair Debt Collections Practices Act, 15 U.S.C. § 1692(k).

2. **Statutory Damages Pursuant to Iowa Debt Collections Practices Act.** Payment to Lori Liles of $1,000 in statutory damages pursuant to Iowa Debt Collections Practices Act, Iowa Code § 537.7101–03.

3. **Reasonable Costs and Attorneys' Fees.** Payment of all reasonable costs and attorneys' fees incurred to date by attorneys for Lori Liles in pursuit of her claims under the Federal Fair Debt Collections Practices Act and the Iowa Debt Collections Practices Act as may be shown in hearing before the court.

*See* Defendant's Brief in Support of Motion to Dismiss, Exh. A. Defendant did not offer to compensate the proposed class. Plaintiff did not accept the offer within the ten-day time frame established by Rule 68. Defendant now moves to dismiss both the FDCPA and IDCPA counts, stating "[b]ecause defendant's offer is equivalent to the total relief available to the plaintiff, there is nothing more to litigate and no longer any actual case or controversy, rendering this lawsuit moot." Defendant's Brief in Support of Motion to Dismiss at 3.

## II.  LEGAL ANALYSIS

■ Article III of the United States Constitution limits the jurisdiction of the federal courts to cases and controversies. U.S. CONST. art. III, § 2. When the issues presented in a case are no longer "live" or the parties lack a legally cognizable interest in the outcome, the case becomes moot and the court no longer has subject matter jurisdiction. *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) (citation omitted). Whenever it appears that subject matter jurisdiction is lacking, the court must dismiss the case. Fed. R.Civ.P. 12(h)(3).

■ Defendant's Rule 68 offer of judgment does provide the maximum statutory relief available to Liles individually under the FDCPA and the IDCPA. The FDCPA allows a plaintiff to recover "any actual damage sustained" by plaintiff due to the debt collector's violation of the FDCPA,[2] "such additional damages as the court may allow, but not exceeding $1,000," and "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(1), (2)(A), (3). The IDCPA similarly provides for recovery of actual damages and, in an action other than a class action, damages of "not less than one hundred dollars nor more than one thousand dollars." Iowa Code § 537.5201(1). The court shall also award the costs of the action and reasonable attorneys' fees. Iowa Code § 537.5201(8). In class actions, however, the maximum relief is greater.[3]

Defendant asks this Court to follow the reasoning of the district court in *Ambalu v. Rosenblatt,* 194 F.R.D. 451 (E.D.N.Y.2000). The *Ambalu* court dismissed the plaintiff's class action complaint after defendant made a Rule 68 offer of judgment for the maximum statutory relief obtainable by plaintiff under the FDCPA. *Id.* at 452–53. No motion had been made for class certification. *Id.* at 453. In essence, the *Ambalu* court permitted the defendant to pay off the named plaintiff and preemptively force an end to the putative class action. As support for its decision, the court cited *Board of School Commissioners v. Jacobs,* 420 U.S. 128, 129, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975) (per curiam) (dismissing class action complaint due to mootness). In that case, no motion had been made for class certification, but the claims of the named plaintiffs became moot because they graduated from high school. *Id.* Mootness was not forced upon plaintiffs by action of the defendants. In contrast, in Liles's case, defendant is claiming mootness as a consequence of its own actions in tendering Liles a Rule 68 offer.

---

2.  Liles does not allege that she suffered any actual damages.

3.  For example, the FDCPA authorizes additional recovery for all other class members "without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector." 15 U.S.C. § 1692k(a)(2)(B).

This issue has not been addressed by the Eighth Circuit. After careful review and reflection upon existing case law, however, this Court believes that the Eighth Circuit would rule differently when presented with the tactic approved in *Ambalu*. The Eighth Circuit has previously observed: "Judgment should be entered against a putative class representative on a defendant's offer of payment only where class certification has been properly denied and the offer satisfies the representative's entire demand for injuries and costs of the suit. This rule protects a class representative's responsibilities to the putative class members from being terminated by a defendant's attempts to pay off the representative's claims." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1539 (8th Cir.1996) (citations omitted). This Court is further persuaded by the observations of the Fifth Circuit: "The notion that a defendant may short-circuit a class action by paying off the class representatives either with their acquiescence or, as here, against their will, deserves short shrift." *Roper v. Consurve, Inc.*, 578 F.2d 1106, 1110 (5th Cir.1978), *aff'd sub. nom. Deposit Guaranty Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980).

> By the very act of filing a class action, the class representatives assume responsibilities to members of the class. They may not terminate their duties by taking satisfaction; a ceasefire may not be pressed upon them by paying their claims. The court itself has special responsibilities to ensure that dismissal does not prejudice putative members.

*Id.* (discussing requirements of Federal Rule of Civil Procedure 23(e)).

Liles filed this action as a class action. As such, she has assumed a responsibility to members of the putative class and this Court has a special responsibility to protect their interests, regardless of whether a motion for class certification has been filed. Hinging the outcome of this motion on whether or not class certification has been filed is not well-supported in the law nor sound judicial prac-

tice; it would encourage a "race to pay off" named plaintiffs very early in litigation, before they file motions for class certification.[4] A different situation could be presented if class certification had been considered and denied, but that is not the case here. Class certification has not been denied, and defendant will not be permitted to force an end to the putative class action.

Liles's class action complaint is not fully satisfied by defendant's Rule 68 offer of judgment. In addition, because Liles did not accept the offer of judgment, it was deemed withdrawn after the passage of ten days. *See* Fed.R.Civ.P. 68 ("[a]n offer not accepted shall be deemed withdrawn ...."); *Littledove v. JBC & Assocs., Inc.*, No. CIV.S–00–0586 WBSGGH, 2000 WL 33141223, at *2 & n. 1 (E.D.Cal. Dec.22, 2000) (denying motion to dismiss FDCPA class action complaint where plaintiffs sought class certification and defendants' Rule 68 offer of judgment was deemed withdrawn). A live controversy remains in this case as to both the FDCPA and IDCPA, and plaintiff still has a legally cognizable interest in the outcome. Defendant's motion to dismiss for lack of subject matter jurisdiction will therefore be denied.

## III. RULING AND ORDER

Defendant's motion to dismiss is DENIED.

IT IS SO ORDERED.

---

4. While the local rules do not establish a specific deadline, a separate motion for class certification must be filed "as soon as practicable after the commencement of the action." LR 23.1(a).

Chief Magistrate Judge Ross Walters will conduct a conference to establish an appropriate schedule for the submission of a class action motion.