828 A.2d 229

Ashleigh CREVELING

v.

GOVERNMENT EMPLOYEES INSURANCE COMPANY.

Sharon Ferguson–Owens, et al.,

v.

State Farm Mutual Automobile Insurance Company.

Nos. 64, Sept. Term 2002, 78 Sept. Term 2002.

Court of Appeals of Maryland.

July 3, 2003.

74

**78**

Kieron F. Quinn and Martin E. Wolf (Quinn, Gordon & Wolf, Chtd. of Towson, Robert K. Jenner of Janet, Willoughby, Gershon, Getz & Jenner, LLC of Baltimore, and Bruce M. Plaxen of Plaxen & Adler, P.A., of Columbia), all on briefs for appellant/cross-appellee.

George M. Church (Laura A. Cellucci, Scott M. Richmond, Evelyn Becker of Church Loker & Silver, P.A., on brief), of Baltimore, for appellee/cross-appellant.

BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

RAKER, Judge.

Appellants Ashleigh Creveling, Sharon Ferguson–Owens, and Michael Pettiford filed suit against appellees Government Employees Insurance Company (GEICO) and State Farm Mutual Automobile Insurance Company (State Farm), alleging breach of contract for the companies' failure to pay the full amount of their Personal Injury Protection (PIP) insurance claims. The overarching question presented by these consolidated cases is whether the trial court properly denied class certification. We shall hold that the Circuit Court of Baltimore City did so, and accordingly, shall affirm.

## I. Facts

### A. *Creveling v. GEICO*

Appellant Ashleigh Creveling was injured in an automobile accident on November 15, 1997. As a result of her injuries, she sought medical treatment. On November 9, 2000, Creveling's attorney submitted a PIP claim[1] for $363.00, an amount

---

1. Maryland Code (1997, 2002 Repl.Vol., 2002 Cum.Supp.) § 19–505 of the *Insurance Article* requires an insurer to provide personal injury protection coverage. The statute reads, in pertinent part, as follows:
 "Personal injury protection coverage—In general.
 "(a) Coverage required.—Unless waived in accordance with § 19–506 of this subtitle, each insurer that issues, sells, or delivers a motor vehicle liability insurance policy in the State shall provide coverage for the medical, hospital, and disability benefits described in this section for each of the following individuals ...
 "(b) Minimum benefits required ...
 "(2) The minimum medical, hospital, and disability benefits provided by an insurer under this section shall include up to $2,500 for:
 "(i) payment of all reasonable and necessary expenses that arise from a motor vehicle accident and that are incurred within 3 years after the accident for necessary prosthetic devices and ambulance, dental, funeral, hospital, medical, professional nursing, surgical, and x-ray services;
 "(ii) payment of benefits for 85% of income lost:
 "1. within 3 years after, and resulting from, a motor vehicle accident; and
 "2. by an injured individual who was earning or producing income when the accident occurred; and
 "(iii) payments made in reimbursement of reasonable and necessary expenses incurred within 3 years after a motor vehicle accident

reflecting expenses paid by her health maintenance organization (HMO), Kaiser Permanente. Her insurer, appellee GEICO, did not pay the claim. Instead, on December 1, 2000, a GEICO claims examiner responded with a short letter noting: "We have received the medical billing presented for your client. Under Maryland Personal Injury Protection (PIP), we will consider expenses that are incurred by the patient. Please provide documentation of payments made by Ms. Creveling for her care with Kaiser. Once we receive this information, we will consider these invoices." Her claim was denied because a collateral source—her HMO—had incurred the costs of treatment.

Creveling filed a class action complaint in the Circuit Court for Baltimore City on April 19, 2001, to recover PIP benefits she previously had been denied. The Second Amended Complaint alleged one count—breach of contract—and prayed for class certification, monetary damages, injunctive and declaratory relief. The complaint alleged that GEICO's refusal to pay her PIP claim in full constituted a breach of the insurance contract. Creveling asserted the claim on behalf of herself and a class of persons for whom GEICO denied or reduced PIP benefits "as a consequence of payments allegedly made by any collateral source or as a consequence of limiting such payments to the sum actually paid, or lost, by the covered person." On July 23, 2001, Creveling filed a Motion for Class Certification pursuant to Maryland Rule 2–231(b)(3). While the motion was pending in the trial court, GEICO tendered to

for essential services ordinarily performed for the care and maintenance of the family or family household by an individual who was injured in the accident and not earning or producing income when the accident occurred.

"(3) As a condition of providing loss of income benefits under this subsection, an insurer may require the injured individual to furnish the insurer with reasonable medical proof of the injury causing loss of income."

Personal Injury Protection (PIP) coverage aims to provide expeditious no-fault compensation for medical bills and lost wages to victims of motor vehicle accidents. *Dutta v. State Farm*, 363 Md. 540, 547–48, 769 A.2d 948, 952 (2001).

Creveling the full amount of her PIP claim plus interest.[2] Creveling rejected the tender and pursued her individual claim and class certification.

## B. *Ferguson–Owens v. State Farm*

On May 26, 2000, appellant Sharon Ferguson–Owens was injured in an automobile accident. After seeking medical treatment for her injuries, Ferguson–Owens filed a PIP claim with her insurer, appellee State Farm, that included a $30.00 bill from her HMO, University Care. State Farm reimbursed Ferguson–Owens for $10.00, the amount of her co-payment, but, without comment, did not pay the remainder of the claim.

On July 20, 2000, appellant Michael Pettiford suffered an injury in an automobile accident. Pettiford submitted a PIP claim to his insurer State Farm in the amount of $499.50 for medical treatment provided by his HMO, Kaiser Permanente. On January 16, 2001, State Farm denied PIP benefits sought on his behalf by Kaiser Permanente in a letter that explained the company's then current policy that pre-dated our decision in *Dutta v. State Farm*, 363 Md. 540, 769 A.2d 948 (2001). State Farm noted that

"the HMO, and not State Farm, is solely liable to the health care provider for the covered services provided to the HMO insured.

"Pursuant to the plain language of the PIP statute, State Farm's liability for a health care charge arises only if and when the HMO insured 'incurs' or becomes personally liable for the expense."

In short, State Farm denied liability on the basis that PIP insurance coverage excluded expenses incurred by entities other than the insured.

Ferguson–Owens filed a class action complaint against State Farm in the Circuit Court for Baltimore City on the same date as Creveling—April 19, 2001—seeking reimbursement

---

2. Maryland Code (1997, 2002 Repl.Vol., 2002 Cum.Supp.) § 19–508(c) of the Insurance Article requires payment of interest on overdue PIP benefits.

for the portion of her PIP claim previously denied. Her complaint alleged breach of contract and requested class-action status, monetary damages, injunctive and declaratory relief. The complaint proposed the same class as the Creveling complaint: persons whose PIP benefits were denied or reduced because of collateral source payments. Before Ferguson–Owens moved for class certification, State Farm tendered full payment of her PIP claim, with interest. Ferguson–Owens rejected the payment; nevertheless, State Farm moved to dismiss the complaint on the grounds that its tender had rendered her individual claim moot. The Circuit Court denied the motion. A few days after the tender, July 27, 2001, Ferguson–Owens filed a Motion for Class Certification. In response to the tender, she filed a Second Amended Complaint on September 5, 2001, to add appellant Pettiford as a named plaintiff; State Farm tendered full payment to him as well.

### C. The Trial Court

Following individual hearings on each Motion for Class Certification, the Circuit Court for Baltimore City denied the motions. In both cases, the trial court found that the proposed class satisfied the numerosity, typicality, and adequacy of representation requirements of Rule 2–231(a) but that the proposed class did not satisfy the commonality requirement. The court reasoned that the cases presented many liability issues requiring individual inquiry unique to each class member, including whether the medical treatment received was accident related, whether the treatment was necessary in light of the injury sustained, and whether the amount sought reflects a reasonable cost for the services provided. The trial court ruled that class certification was inappropriate under Rule 2–231(a) because the plaintiffs failed to satisfy the requirement that there be questions of law or fact common to the class. Following these decisions, defendants again tendered to plaintiffs the unpaid portion of their PIP claims.

Plaintiffs then moved for summary judgment on their individual claims. Defendants opposed these motions on moot-

ness grounds; State Farm filed a counter-motion for summary judgment or dismissal, and GEICO filed a motion to dismiss. The trial court granted plaintiffs' motions for summary judgment.

Plaintiffs noted timely appeals of the class certification denials to the Court of Special Appeals, and defendants filed timely cross-appeals to that court seeking review of the denial of their motions. Pursuant to Rule 8–302, plaintiffs petitioned this Court for writs of certiorari before the Court of Special Appeals entertained the appeals. We granted certiorari and ordered that argument in the two cases be heard together. *Ferguson–Owens v. State Farm*, 371 Md. 261, 808 A.2d 806 (2002); *Creveling v. GEICO*, 371 Md. 68, 806 A.2d 679 (2002).

The primary issue presented in this appeal is the propriety of the trial courts' denial of class certification. Appellants also ask this court to determine the appropriate standard of review for a denial of class status and whether an insurance company, by denying a claim on one ground, waived or is estopped from reevaluating claims during the remediation process and arguing other grounds for denial of coverage. Appellees' cross-appeal raises the question whether the tender of the full amount of appellants' PIP claims, prior to and after the denials of class certification, rendered the actions moot. We hold that the trial court properly denied the Motions for Class Certification.[3]

---

**3.** Because the class certification issues are dispositive, we need not decide the merits of the cross-appeal. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 830–31, 119 S.Ct. 2295, 2307, 144 L.Ed.2d 715 (1999) (declining to reach threshold justiciability issues because class certification issues were "logically antecedent" to those concerns); *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 612–13, 117 S.Ct. 2231, 2244, 138 L.Ed.2d 689 (1997) (declining to reach threshold justiciability issues because class certification issues were dispositive and logically antecedent to any justiciability issues). In their cross-appeal, appellees argue that these actions, at three different points, were rendered moot by their tender of the full amount of appellants' individual monetary claims. First, State Farm argues that their tender to Ferguson–Owens before she filed a Motion for Class Certification mooted her claim, requiring dismissal of the entire action. Second, both appellees argue that the actions are moot because they tendered relief to appellants prior to the

**84** 

Note 3—Continued
trial court's decision on class certification. Finally, appellees contend that the actions are moot because they tendered relief after the trial court denied class certification. Appellants assert that the actions are not mooted by the tenders, which they did not accept. Appellants urge this Court to recognize a 'picking off' exception, arguing that the tenders do not moot the actions because appellants sought to avoid class action litigation.

In Maryland, a case is justiciable "when there are interested parties asserting adverse claims upon a state of facts which must have accrued wherein a legal decision is sought or demanded." *Reyes v. Prince George's County*, 281 Md. 279, 288, 380 A.2d 12, 17 (1977) (quoting 1 W. Anderson, *Actions for Declaratory Judgments* § 17 at 67 (2d ed.1951)). Ordinarily, courts will not decide moot or abstract questions, or render advisory opinions. *Hammen v. Baltimore Police*, 373 Md. 440, 449–50, 818 A.2d 1125, 1131 (2003). A question is moot if, at the time it is before the court, there is no longer an existing controversy between the parties, so that the court cannot provide an effective remedy. *Id.* at 449, 818 A.2d. at 1131. Mootness may be more flexible, however, in the context of class action litigation. *See United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 400–01, 100 S.Ct. 1202, 1211, 63 L.Ed.2d 479 (1980).

Many jurisdictions have considered the effect of settlement of a named plaintiff's claim on the merits at the three stages alluded to by appellants and have reached differing results. First, when named plaintiffs' individual claims are satisfied following the filing of a class action complaint but before the filing of a Motion for Class Certification, many courts conclude that the entire action should be dismissed. *See, e.g., Cruz v. Farquharson*, 252 F.3d 530, 533 (1st Cir.2001) ("Despite the fact that a case is brought as a putative class action, it ordinarily must be dismissed as moot if no decision on class certification has occurred by the time that the individual claims of all named plaintiffs have been fully resolved."); *Holstein v. City of Chicago* 29 F.3d 1145, 1147 (7th Cir.1994); *Brunet v. City of Columbus*, 1 F.3d 390, 399 (6th Cir.1993); *Yu v. Int'l Bus. Mach. Corp.*, 314 Ill.App.3d 892, 247 Ill.Dec. 841, 732 N.E.2d 1173,1178–79 (2000) (noting that tender of relief to named plaintiff prior to the filing of a motion for class certification rendered case moot); *DeCoteau v. Nodak Mut. Ins. Co.*, 636 N.W.2d 432, 437 (N.D.2001) ("When a named plaintiff whose individual claim becomes moot has not even moved for class certification prior to evaporation of his personal stake in the lawsuit, courts uniformly hold the plaintiff may not avail himself of the class action exception to the mootness doctrine."). Some courts conclude that the filing of a class action complaint invokes the interests of potential class members that remain live despite the mootness of a named plaintiff's claim. *See, e.g., Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 342, 100 S.Ct. 1166, 1176, 63 L.Ed.2d 427 (1980) (Stevens, J., concurring) (noting that "when a proper class-action complaint is filed, the absent members of the class should be considered parties to the case or controversy.... [T]hey remain parties until a final determination has been made that the action may not be maintained as a class action"); *Roper v. Consurve, Inc.*, 578 F.2d 1106, 1110 (5th Cir.1978), *aff'd on other grounds sub nom., Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 100 S.Ct.

Note 3—Continued

1166, 63 L.Ed.2d 427 (1980) ("By the very act of filing a class action, the class representatives assume responsibilities to members of the class. They may not terminate their duties by taking satisfaction; a cease-fire may not be pressed upon them by paying their claims."); *Encarnacion v. Barnhart*, 180 F.Supp.2d 492, 498 (S.D.N.Y.2002) ("[C]lass claims may survive an otherwise mooting act of the defendant when there existed at the time of the filing of a motion for class certification or a class complaint a live case or controversy"); *Liles v. Am. Corrective Counseling Serv., Inc.*, 201 F.R.D. 452, 455 (S.D.Iowa 2001) (noting that defendant's offer prior to the filing of motion for class certification did not moot the action filed as a class action).

Next, when defendants tender relief to named plaintiffs while a Motion for Class Certification is pending before the trial court, the general rule is that the mootness of the individual claim requires dismissal of the entire action. *See DeCoteau*, 636 N.W.2d at 437 ("When a named plaintiff's individual claim becomes moot before a class has been properly certified or certification has been denied, courts generally hold a dismissal of the action is required."); *see also Brunet*, 1 F.3d at 399; *Lusardi v. Xerox Corp.*, 975 F.2d 964, 975 (3d Cir.1992). Some courts observe that this general rule may not apply when a tender comes while plaintiffs diligently pursue a pending motion for class certification. *See Susman v. Lincoln Am. Corp.*, 587 F.2d 866, 870 (7th Cir.1978) (holding that "when a motion for class certification has been pursued with reasonable diligence and is then pending before the district court, a case does not become moot merely because of the tender to the named plaintiffs of their individual money damages"); *see also Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 135 (3d Cir.2000); *Zeidman v. McDermott & Co.*, 651 F.2d 1030, 1045 (5th Cir.1981); *Yu*, 247 Ill.Dec. 841, 732 N.E.2d at 1179. In *Greisz v. Household Bank*, 176 F.3d 1012 (7th Cir.1999), the United States Court of Appeals for the Seventh Circuit noted that a settlement offer to any named plaintiffs while the judge was deciding whether to certify the class is a tactic "precluded by the fact that before the class is certified, which is to say at a time when there are many potential party plaintiffs to the suit, an offer to one is not an offer of the *entire* relief sought by the suit, unless the offer comes before class certification is sought." *Id.* at 1015 (citations omitted).

Finally, the United States Supreme Court has held that following a denial of class certification, the entry of judgment in favor of the named plaintiff will not bar the plaintiff from appealing the class certification denial. *See, e.g., Geraghty*, 445 U.S. at 404, 100 S.Ct. at 1212–13, 63 L.Ed.2d 479; *Deposit Guar. Nat'l Bank*, 445 U.S. at 336–40, 100 S.Ct. at 1173–75, 63 L.Ed.2d 427; *see also* 1 A. Conte & H. Newberg, *Newberg on Class Actions* § 2:31, at 190 (4th ed.2002).

In the instant case, there is no indication that appellees purposefully attempted to 'pick-off' the named plaintiffs to avoid class action litigation. Appellees tendered payment of the previously denied PIP claims pursuant to their programs to repay policy holders following this Court's decision in *Dutta v. State Farm*, 363 Md. 540, 769 A.2d 948 (2001). They acted promptly to comply with a new interpretation of the PIP statute. Furthermore, inasmuch as we have determined that the trial court properly denied class certification, proposed class mem-

## II. *Dutta v. State Farm*

Appellants filed suit against appellees following this Court's recent decision, *Dutta v. State Farm*, 363 Md. 540, 769 A.2d 948 (2001). In that case, Dr. Sisir Dutta, injured in an automobile accident, submitted a PIP claim seeking reimbursement for medical treatment. *Id.* at 543–44, 769 A.2d at 950. His insurer, State Farm, refused to reimburse the portion of his hospital bill that had been paid originally by Dutta's HMO and only paid him the amount of his co-payment. Dutta filed suit, alleging that State Farm wrongly denied his PIP claim under Maryland insurance law. We considered whether the cost of Dutta's treatment was an incurred expense for which he was entitled to recover even though his HMO actually incurred the costs. *Id.* at 547, 769 A.2d at 952. We held that, under Maryland Code (1997 Repl.Vol.) § 19–505 of the Insurance Article, insurers must pay PIP benefits to an insured regardless of the fact that a collateral source such as an HMO incurred the expense. *Id.* at 563–64, 769 A.2d at 961–62.

Prior to *Dutta*, appellees interpreted Maryland law as requiring insurers to pay for medical expenses incurred by the insured, not including expenses paid for by a third party such as an HMO. Appellants' purportedly seek to enforce the holding of *Dutta*. Nine days after we filed *Dutta*, appellants initiated these actions to obtain reimbursement for PIP claims denied because of collateral source payments. Around the same time, appellees changed their policy prospectively to comply with *Dutta* and initiated a "remediation" program to reimburse their insureds for medical expenses an HMO paid

---

Note 3—Continued

bers no longer retain an interest in the action. Accordingly, we need not resolve the effect of the tenders of relief. Nonetheless, we emphasize that our restraint under the circumstances of this case does not constitute an endorsement of tendering payment to named plaintiffs with the goal of annulling class action litigation. As the United States Court of Appeals for the Fifth Circuit remarked, "[t]he notion that a defendant may short-circuit a class action by paying off the class representatives either with their acquiescence or . . . against their will, deserves short shrift. Indeed,

on his or her behalf. Through the remediation process, appellees reviewed past claims to determine which required additional payment and paid wrongly denied portions with statutory interest. The *Dutta* ruling, therefore, set the stage for the instant cases.

### III. Class Certification

The central question before this Court is the propriety of the denials of class certification. Maryland Rule 2–231 authorizes class action litigation. The Rule provides, in relevant parts, as follows:

"(a) **Prerequisites to a class action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"(b) **Class actions maintainable.** Unless justice requires otherwise, an action may be maintained as a class action if the prerequisites of section (a) are satisfied, and in addition:

"(1) the prosecution of separate actions by or against individual members of the class would create a risk of

"(A) inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the party opposing the class, or

"(B) adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

"(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby mak-

were it so easy to end class actions, few would survive." *Roper,* 578 F.2d at 1110.

ing appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or "(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions, (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class, (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum, (D) the difficulties likely to be encountered in the management of a class action.

"(c) **Certification.** On motion of any party or on the court's own initiative, the court shall determine by order as soon as practicable after commencement of the action whether it is to be maintained as a class action. A hearing shall be granted if requested by any party. The order shall include the court's findings and reasons for certifying or refusing to certify the action as a class action. The order may be conditional and may be altered or amended before the decision on the merits."

Rule 2–231(a) presents four threshold requirements: numerosity, commonality, typicality, and adequacy of representation. These requirements are necessary but not alone sufficient; a putative class also must fall into one of three subcategories of Rule 2–231(b).[4] *See Philip Morris v. Angeletti,* 358 Md. 689, 727, 752 A.2d 200, 221 (2000). The party

---

4. Rule 2–231 is similar to Rule 23 of the Federal Rules of Civil Procedure. Our analysis shall be informed by cases interpreting Rule 23 and other analogous state rules outlining class certification requirements. *See Philip Morris v. Angeletti,* 358 Md. 689, 724–25, 752 A.2d 200, 219–20 (2000) (noting that "there exists an abundance of cases from other jurisdictions, federal and state, that have analyzed class action rules either identical to or similar to Maryland's rule" and utilizing those cases as analytical aids).

seeking class certification bears the burden of proving that all of the Rule's requirements have been satisfied. *Id.* at 726, 752 A.2d at 220. A trial court must conduct a "rigorous analysis" of these prerequisites before certifying a class. *See Gen. Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). In so doing, a trial court should accept a plaintiff's allegations as true, *Philip Morris,* 358 Md. at 726, 752 A.2d at 220, but may look beyond the pleadings to determine whether class certification is appropriate. *See Falcon,* 457 U.S. at 160, 102 S.Ct. at 2372, 72 L.Ed.2d 740; *see also Castano v. Am. Tobacco Co.,* 84 F.3d 734, 744 (5th Cir.1996) ("Going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues."). A trial court may not, however, conduct a review of the merits of the lawsuit. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974) (noting that "[i]n determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met").

> "Class relief is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class.' For in such cases, 'the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion."

*Falcon,* 457 U.S. at 155, 102 S.Ct. at 2369, 72 L.Ed.2d 740 (alteration in original) (citations omitted).

In the instant cases, appellants sought certification pursuant to Rule 2–231(b)(3).[5] The Circuit Court denied the

---

5. Appellants' second amended complaints alleged a putative class under Maryland Rule 2–231(b)(2) and 2–231(b)(3). Their Motions for Class Certification only alleged a class pursuant to 2–231(b)(3), and the trial court evaluated the claims on that basis. Moreover, appellants argue to

motions because appellants had not satisfied the necessary prerequisites of 2–231(a); the court did not consider the requirements of 2–231(b)(3).[6] With this background, we review the trial court's orders.

We ordinarily review a trial court's decision regarding whether to certify a class action for an abuse of discretion. *Philip Morris,* 358 Md. at 726, 752 A.2d at 220; *see also, e.g., In re Linerboard Antitrust Litig.,* 305 F.3d 145, 149–50 (3d Cir.2002); *Waste Mgmt. Holdings, Inc. v. Mowbray,* 208 F.3d 288, 295 (1st Cir.2000); *Washington v. CSC Credit Serv. Inc.,* 199 F.3d 263, 265 (5th Cir.2000); *McAuley v. Int'l Bus. Mach. Corp.,* 165 F.3d 1038, 1046 (6th Cir.1999); *Keele v. Wexler,* 149 F.3d 589, 592 (7th Cir.1998); *Heaven v. Trust Co. Bank,* 118 F.3d 735, 737 (11th Cir.1997); *Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525, 1539 (8th Cir.1996); *Hartman v. Duffey,* 19 F.3d 1459, 1471 (D.C.Cir.1994); 4 A. Conte & H. Newberg, *Newberg on Class Actions* § 13:62, at 475–76 (4th ed.2002). Implicit in this standard is a recognition that the basis of the certification inquiry is essentially a factual one, and thus, deference is due. *See Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 408 (5th Cir.1998). However, whether the trial court used a correct legal standard in determining whether to grant or deny class certification is a question of law that we review *de novo. Philip Morris,* 358 Md. at 726, 752 A.2d at 220; *Allison,* 151 F.3d at 408.

Without actually articulating a workable standard, appellants urge this Court to apply a *different* standard of review when the trial court denies class certification—suggest-

---

this Court that they do not seek declaratory or injunctive relief. Appellants, therefore, have waived any argument as to 2–231(b)(2), and we solely consider the trial court's determinations pursuant to Rule 2–231(b)(3).

6. When a class does not satisfy the threshold requirements of Md. Rule 2–231(a), it is not necessary for a court to consider the requirements of Rule 2–231(b). *See Broussard v. Meineke Disc. Muffler Shops, Inc.,* 155 F.3d 331, 337 n. 3 (4th Cir.1998) (noting that it is unnecessary to determine whether the action meets the criteria of Federal Rule of Civil Procedure 23b when plaintiffs fail to qualify under Rule 23a).

ing perhaps a "narrowed approach" or a less deferential one. In our view, the standard of review does not depend upon whether the trial court grants or denies the class certification. We perceive no reason to apply a different standard of review when a trial court denies, rather than grants, a motion for class certification because in both instances, a deferential standard appropriately recognizes the factual nature of a class certification inquiry and a trial court's power to manage its docket. *See* 4 A. Conte & H. Newberg, *supra*, § 13:62, at 475.

## A. Commonality

The trial court denied appellants' Motions for Class Certification on the grounds that the putative classes lacked common questions of law or fact as required by Rule 2–231(a)(2). The court noted that the cases involved liability issues requiring an "individual inquiry unique to each putative class member." The court concluded that "there is no determinative critical issue which overshadows all other issues and therefore [appellants] cannot meet the commonality prong of Md. Rule 2–231(a)." The court held that, although appellants satisfied the numerosity, typicality, and adequacy of representation requirements, there was inadequate commonality to certify the proposed classes.

Appellants argue that the trial court erred by applying a legal standard more rigorous than that required by Rule 2–231(a)(2). They maintain that there need be only one common question of law or fact, not a determinative issue that overshadows all others, and that they have identified common questions. Furthermore, they contend that the only individual issue to be decided is damages because appellees waived or are estopped from reviewing each claim and from raising additional defenses.

 Rule 2–231(a)(2) requires that "there are questions of law or fact common to the class." [7] Md. Rule 2–231(a)(2).

---

7. We will not address the merits of the trial court's determinations of the numerosity and typicality requirements because those findings are

This Court recently discussed the commonality standard at length in *Philip Morris v. Angeletti,* 358 Md. 689, 752 A.2d 200 (2000). This prerequisite "promotes 'convenience, uniformity of decision, and judicial economy,' because common issues are litigated 'only once on behalf of all class members.'" *Id.* at 734, 752 A.2d at 225. A common question must exist, but common questions need not predominate over individual issues. *Id.,* 752 A.2d at 225. While the commonality requirement is less demanding than Rule 2–231(b)(3)'s requirement that common questions predominate over individual ones, see *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 623–24, 117 S.Ct. 2231, 2250, 138 L.Ed.2d 689 (1997), "an issue of law or fact should be deemed 'common' only to the extent its resolution will advance the litigation of the entire case." *Philip Morris,* 358 Md. at 736, 752 A.2d at 226. Although the trial court may have applied too demanding a commonality standard, that court did not err in denying class certification on this basis. Under any standard, appellants failed to satisfy the commonality requirement.

■ The only possible common question presented herein is whether an insurer must pay PIP benefits to an insured when an expense is incurred on his or her behalf, regardless of whether a collateral source paid the bill. Appellants concede, however, that the question of whether appellees' policy of denying PIP benefits because of collateral source payments is legal has been answered by this Court in *Dutta.* Following *Dutta,* it became settled Maryland law that an insurer must pay PIP benefits to an insured when an expense is incurred on his or her behalf, regardless of whether a collateral source, such as an HMO, actually paid the bill. 363 Md. 540, 562, 769

uncontested. *See Zeidman v. McDermott & Co.,* 651 F.2d 1030, 1034 n. 1 (5th Cir.1981) (noting that because the trial court's "determinations on class action prerequisites other than numerosity are not challenged by the defendants in this appeal; we therefore express no view on the merits of those determinations"). In addition, we need not consider appellees' argument as to adequacy of representation because we find that the trial court did not err in its determination that the proposed class lacked commonality.

A.2d 948, 961 (2001). When the instant cases were filed, merely nine days after the *Dutta* ruling, there was no question that appellees' practice of denying PIP benefits involving collateral source payments was illegal. The only question that remained was whether appellees owed particular individuals additional PIP benefits. As such, the legality of appellees' PIP payment policy is not a question common to the class.

Other jurisdictions have found a lack of commonality where previous litigation settled the alleged common question. In *McCabe v. Burgess*, 75 Ill.2d 457, 27 Ill.Dec. 501, 389 N.E.2d 565, 570, *cert. denied*, 444 U.S. 916, 100 S.Ct. 230, 62 L.Ed.2d 170 (1979), the Illinois Supreme Court affirmed a trial court's order denying class certification because there were no questions of law or fact common to the class. James McCabe filed suit and sought class certification to enforce prior court rulings. The court noted with approval that the

> "trial court specifically found that the question of law common to the members of the purported class had been decided in *People v. McCabe* [49 Ill. 2d 338, 275 N.E.2d 407 (1971)] and *People v. Meyerowitz* [61 Ill.2d 200, 335 N.E.2d 1 (1975)]. The court also found that a class action would not in any way relieve the court or the litigants of any burden or time expended in resolving the factual questions material to the claimants' right to recover and that the factual questions that would be involved would require the examination of each individual case. Thus the court found that there were no unresolved questions of law or fact common to the members of the class and that maintaining the class action would not result in an increased efficiency in the adjudication of the claims."

*Id.* at 567. The court noted that "[o]nly a clear abuse of discretion or an application of impermissible legal criteria as shown justifies a reversal of the trial court." *Id.* at 568. The court held that the trial court was correct in finding a lack of commonality. McCabe's proposed questions regarding the constitutionality of the statute and the right of those convicted under it were "no longer controverted." *Id.* at 569. The court observed that "[a]ll that remains are the questions that

relate only to individuals who were convicted under the invalid statute: (1) Of what offense was each convicted? and (2) What were the fines and costs paid? These questions must be determined as to each individual." *Id.* Settled precedent could not satisfy the commonality prerequisite. The court concluded that "[t]here is no common question which predominates to be adjudicated independently of these questions that relate only to the individuals." *Id.*

In *Ralph v. American Family Mutual Insurance Co.*, 835 S.W.2d 522, 523–24 (Mo.Ct.App.1992), the Missouri Court of Appeals held that no common question of law or fact existed to support class certification. Marvin Ralph filed a class action complaint on behalf of persons insured by American Family Mutual Insurance Company who had not received full medical benefits because of a policy set-off provision that reduced medical payments by amounts received under uninsured motorist coverage. *Id.* at 523. Two years prior, in *Kuda v. American Family Mutual Insurance Co.*, 790 S.W.2d 464 (Mo.1990), the Missouri Supreme Court had found such a policy provision invalid. As a result of this previous ruling, the *Ralph* court affirmed the trial court order denying class certification for lack of commonality. The intermediate appellate court stated:

"This case was filed two days after the decision in *Kuda.* At that time the only question of law or fact common to the class, i.e., the validity of the set-off provision, was no longer a question, it had been answered. If a case existed for class action treatment it was *Kuda.* After *Kuda* the issues remaining in cases to recover medical payments were fact questions such as whether the policy contains medical payment coverage, the amount of medical treatment, whether that treatment was necessary, whether the charges are reasonable, and whether the treatment was for injuries sustained in the accident. All of those questions are specific to the individual claimant, not common to the class."

*Id.* at 524.

In the instant cases, *Dutta* answered the question that appellants urge is common to the putative classes. Appellees'

former practice is illegal; they changed their practice and instituted a program to reimburse claims previously denied on the basis of collateral source payments. As a result, only individual issues remain to be resolved in this litigation, including the liability limit of a particular claimant's policy, whether the medical treatment received was necessary and related to the accident, whether the charges for those treatments were reasonable, and whether additional benefits that were previously denied because of a collateral source payment are now due.

 Appellants next argue that the doctrine of waiver operates to establish commonality. In the instant cases, appellants, in effect, argue that the cases pose no individual questions because of the doctrine of waiver. Appellants ask this Court to find as a matter of law that appellees waived the right to raise additional defenses during this litigation. Appellants argue that appellees have waived the right to review claims and raise additional defenses because they based their previous denials on only one basis—collateral source payments. As such, they contend that the cases present no individual questions because appellees have waived their right to assess claims for necessity, reasonableness, and accident relatedness. Assuming we find waiver under the facts, appellants further argue that waiver would not extend coverage impermissibly because appellees have acknowledged coverage by paying the co-payment portion of the claims. Furthermore, and presumably in the alternative, appellants contend that there is a common question as to whether appellees waived their right to review each claim during the post-*Dutta* remediation process.

The trial court did not address waiver specifically but reasoned that the cases required analysis of individual claims, including whether such claims were reasonable, medically necessary, and accident related. Implicitly, the lower court found waiver inapplicable. We hold that the trial court did not err by finding waiver inapplicable; appellees did not waive their right to raise defenses so as to eliminate the need for

individual inquiries and establish commonality. Appellees have not waived their rights to review individual claims during the remediation process because, assuming *arguendo* there is sufficient evidence of implied waiver, waiver would operate impermissibly to expand coverage.

The doctrine of waiver may work to deprive an insurer of a right it would otherwise possess. *See GEICO v. Medical Services,* 322 Md. 645, 650, 589 A.2d 464, 466 (1991). Waiver, in general, is "the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances." *Food Fair v. Blumberg,* 234 Md. 521, 531, 200 A.2d 166, 172 (1964) (citations omitted). In insurance law, waiver requires " 'an actual intention to relinquish an existing right, benefit, or advantage, with knowledge, either actual or constructive, of its existence, or such conduct as to warrant an inference of such intention to relinquish.' " *Medical Services,* 322 Md. at 650–51, 589 A.2d at 466 (quoting 16B Appleman, *Insurance Law and Practice* § 9085 (1981)). Whether waiver exists in a given case "is normally a question for the trier of fact, for the determination of its existence *vel non* turns on the intent of the party ostensibly waiving the right, a state of mind which is to be derived from the facts and circumstances surrounding the purported relinquishment." *St. Paul Fire & Mar. Ins. v. Molloy,* 291 Md. 139, 145, 433 A.2d 1135, 1138 (1981); *see also* 16B J.A. Appleman & J. Appleman, *Insurance Law and Practice,* § 9084 (Rev.Vol.1981).

The doctrine of waiver cannot operate to expand or establish insurance coverage. *See Medical Services,* 322 Md. at 651, 589 A.2d at 467; *Neuman v. Travelers Indemnity Co.,* 271 Md. 636, 654, 319 A.2d 522, 531 (1974); *Aetna Cas. & Sur. Co. v. Urner,* 264 Md. 660, 668, 287 A.2d 764, 768 (1972); *A/C Electric Co. v. Aetna Ins. Co.,* 251 Md. 410, 419, 247 A.2d 708, 713 (1968). Judge Wilner, writing for the Court of Special Appeals in *Insurance Co. of North America v. Coff-*

*man,* described the doctrine of waiver and this exception as follows:

> "[T]he Court of Appeals sees a distinction between defenses founded upon lack of basic coverage and those arising from the failure of the claimant to satisfy some 'technical' condition subsequent. The former, it is apparent, may not be waived merely by the company's failure to specify them in its initial response to the claim, for the effect of that would be to expand the policy to create a risk not intended to be undertaken by the company."

52 Md.App. 732, 742–43, 451 A.2d 952, 957 (1982); *see also Medical Services,* 322 Md. at 651, 589 A.2d at 467. In this regard, Maryland law reflects the majority rule.[8] *See, e.g., Aetna Cas. & Sur. Co.,* 264 Md. at 668, 287 A.2d at 768; *Brown Mach. Works & Supply Co. v. Ins. Co. of N. Am.,* 659 So.2d 51, 53 (Ala.1995); *Am. States Ins. Co. v. McGuire,* 510 So.2d 1227, 1229 (Fla.Dist.Ct.App.1987); *W. Food Prod. Co. v. United States Fire Ins. Co.,* 10 Kan.App.2d 375, 699 P.2d 579, 584 (1985); *Palumbo v. Metro. Life Ins. Co.,* 293 Mass. 35, 199 N.E. 335, 336 (1935); *Albert J. Schiff Assoc., Inc. v. Flack,* 51 N.Y.2d 692, 435 N.Y.S.2d 972, 417 N.E.2d 84, 87 (1980); *Currie v. Occidental Life Ins. Co.,* 17 N.C.App. 458, 194 S.E.2d 642, 643 (1973); *Turner Liquidating Co. v. St. Paul Surplus Lines Ins. Co.,* 93 Ohio App.3d 292, 638 N.E.2d 174, 178 (1994); *Texas Farmers Ins. Co. v. McGuire,* 744 S.W.2d 601, 603 (Tex.1988); *Estate of Hall v. HAPO Fed. Credit*

---

8. This general rule, that waiver cannot operate to establish or expand insurance coverage, may be subject to exceptions. *See, e.g., Turner Liquidating Co. v. St. Paul Surplus Lines Ins. Co.,* 93 Ohio App.3d 292, 638 N.E.2d 174, 178–80 (1994); C.L. McIlwain, *Clear as Mud: An Insurer's Rights and Duties Where Coverage Under a Liability Policy is Questionable,* 27 Camb. L.Rev. 31, 37 (1997) (noting that "[t]he only apparent exceptions to this rule include the following: (1) the insurer fails to deliver a copy of the policy to the insured at the time of issuance, (2) the insurer or its agent makes a misrepresentation that coverage exists before or at the inception of the insurance policy, or (3) where the insurer provides a reservation of rights defense but does so in a manner that breaches its good faith obligations." (footnotes omitted)). As the parties' arguments do not raise any exceptions, we need not discuss them further.

*Union,* 73 Wash.App. 359, 869 P.2d 116, 118 (1994); *Potesta v. United States Fid. & Guar. Co.,* 202 W.Va. 308, 504 S.E.2d 135, 146–47 (1998); *Utica Mut. Ins. Co. v. Klein & Son, Inc.,* 157 Wis.2d 552, 460 N.W.2d 763, 767 (1990); 16B Appleman, *supra,* § 9083, 9090; Annot., *Insurance Coverage—Estoppel—Waiver* 1 A.L.R.3d 1139 (1965); 18 G. Couch, *Couch on Insurance 2d* § 71:40 (Rev. ed.1983). *But see Tate v. Charles Aguillard Ins. & Real Estate, Inc.,* 508 So.2d 1371, 1375 (La.1987).

To determine whether the doctrine of waiver may apply, the pivotal issue is whether a policy clause or condition proffered as a defense pertains to coverage or whether it arises from "the failure of the claimant to satisfy some 'technical' condition subsequent." *See Medical Services,* 322 Md. at 651, 589 A.2d at 467; *see also Wright v. Newman,* 598 F.Supp. 1178, 1198 (W.D.Mo.1984). "Conditions going to the coverage or scope of a policy as distinguished from those furnishing a ground for forfeiture may not be waived by implication from conduct or action." 16B Appleman, *supra,* § 9083, at 518.

The line between issues pertaining to coverage as distinguished from grounds for forfeiture can be hard to draw. *See Tate,* 508 So.2d at 1374–75, *Utica Mut. Ins. Co.,* 460 N.W.2d at 767. °As one court has noted, "where the provision relates to the scope of the risks to be covered (either by inclusion or exclusion) or to the dollar amount of coverage, it is to be dealt with as a 'coverage' matter; otherwise, and particularly if it operates to furnish a ground for the forfeiture of coverage or for the defeasance of liability . . . it will be treated as a 'forfeiture' clause." *Wright,* 598 F.Supp. at 1199; *see also Utica Mut. Ins. Co.,* 460 N.W.2d at 767 (noting that "[a]s a general rule, conditions and terms, either of an inclusionary or exclusionary nature in the policy, go to the scope of the coverage or delineate the risks assumed, as distinguished from conditions and terms which furnish a ground for the forfeiture of coverage or defeasance of liability"). Courts describe clauses that are inclusionary or exclusionary, that outline the scope of coverage, or that delineate the dollar amount of liability as

pertaining to coverage. *See, e.g., Medical Services*, 322 Md. at 651, 589 A.2d at 467; *Wright*, 598 F.Supp. at 1199; *Utica Mut. Ins. Co.*, 460 N.W.2d at 767. On the other hand, forfeiture clauses often include provisions such as filing a timely notice of claim and submitting proofs of loss, and are invoked to avoid liability for existing coverage. *See, e.g., St. Paul Fire & Mar. Ins.*, 291 Md. at 146–47 n. 4, 433 A.2d at 1139 n. 4; *Coffman*, 52 Md.App. at 742, 451 A.2d at 957; *Estate of Hall*, 869 P.2d at 118–19.

The question therefore becomes whether the clauses in the instant cases pertain to coverage or provide grounds for forfeiture. Appellee GEICO, pursuant to its PIP policy, "will pay to and for the *injured person* the following benefits for loss and expense incurred because of *bodily injury* caused by an accident and involving a *motor vehicle:* (a) *medical expense benefits*[9] for each *injured person* . . . ." State Farm "will pay in accordance with the *No–Fault Act* for *bodily injury* to an *insured,* caused by a *motor vehicle* accident, for: (1) Medical Expenses. Reasonable charges incurred within three years after the date of the accident for necessary: (a) medical, surgical, X-ray, dental, ambulance, hospital, and professional nursing services . . . ."

The pertinent clauses, in essence, cover medical expenses due to motor vehicle injuries that are reasonable, medically necessary, and related to the accident. These prerequisites are not merely technical conditions that must be satisfied for existing coverage to apply; they define the boundaries of coverage. Waiver of these requirements would change radically the nature of the insurance policies. Whether a claim is reasonable, medically necessary, and related to the accident pertains to coverage. Appellants argue that appellees may not review the individual claims to ensure that the treatment

---

**9.** The GEICO policy provides the following definition: *"'Medical expense benefits'* means payment for reasonable and necessary expenses for medical, surgical, x-ray, and dental services, prosthetic devices, ambulances, hospital, professional nursing and *funeral services* arising from the accident and incurred within three (3) years from the accident date."

was medically necessary and that the charges were reasonable and related to the accident. Furthermore, appellants contend that appellees cannot defend against paying previously denied PIP claims on the basis of lack of reasonableness, medical necessity, and accident relatedness. If, as appellants argue, appellees cannot review the claims and assert defenses, then appellees would be obliged to cover claims stretching beyond the limits of the policies. The effect of appellants' argument would be to require appellees to pay all PIP benefits previously denied for a collateral source payment even if the claims were unreasonable, medically unnecessary, unrelated to the accident, or fraudulent. It is clear that the doctrine of waiver applied as appellants urge would create liability beyond the bounds of the policies. "Insurance companies need and are entitled to reasonable limits on their responsibilities; the public is prejudiced when company liabilities are by generous caprice stretched over risks that cannot be profitably underwritten at a just premium." C. Morris, *Waiver and Estoppel in Insurance Policy Litigation*, 105 U. Pa. L.Rev. 925, 926 (1957). Denying appellees the right to review individual claims and raise these defenses would impermissibly extend insurance coverage; therefore, the doctrine of waiver is inapplicable.[10] As a result, the issue of waiver cannot pose a question common to the class.

---

10. Even if waiver did not threaten to expand coverage, there appears to be insufficient evidence of implied waiver. In particular, there is no indication that, by denying PIP benefits on the basis of collateral source payments, appellees actually intended to relinquish the right to raise other defenses. What is clear is that State Farm and GEICO believed that Maryland law did not require them to pay benefits to PIP claimants when an HMO actually incurred the costs. Appellants argue that the insurers reviewed *all* PIP claims for reasonableness, necessity and accident-relatedness prior to denying payment. Such a uniform practice is, however, not evident. It is equally likely that on receiving a bill involving an HMO, appellees denied the portion paid by the HMO without an extensive review on the basis of their legal assumption. Appellees acknowledge that, prior to *Dutta*, their practice was to deny payment of PIP benefits when collateral sources such as HMOs actually paid the medical expenses. The insurers believed that Maryland law did not obligate them to pay insureds for expenses incurred by HMOs.

Appellants further argue to this Court that appellees are estopped from reviewing claims during the remediation process and that, because of this estoppel, there are no individual issues to determine during the course of the action. Appellant Creveling first mentioned estoppel in a reply to GEICO's opposition to the Motion for Class Certification. In two brief paragraphs, Creveling argued that GEICO's denial of PIP claims on the basis of collateral source payments alone created an estoppel. Creveling asserted as follows:

"GEICO's conduct in denying each class member's claim solely on the erroneous *Dutta* analysis caused the class members to reasonably believe that their claims were otherwise valid and payable. Beyond question the majority of class members did not keep the medical bills and other documents which were once presented, or available, to GEICO. PIP claims are small claims and rare are Plaintiffs who will file suit against a Fortune 500 company for a few hundred dollars. The reliance of and the detriment to the class members is clear."

Neither Creveling nor the other appellants argued estoppel to the trial court at the hearing on class certification. They presented no evidence to support an estoppel claim, nor did they argue estoppel to the court.

Before this Court, appellants press their estoppel arguments. They argue that appellees should be estopped from reviewing individual PIP claims during the remediation process because they have reviewed the claims before and denied them on the basis of collateral source payments alone. As prejudice, they assert only that it is "highly likely" that class members have not kept medical bills and documentation necessary for reimbursement during remediation; therefore, claimants cannot collect previously denied benefits.

The basis of equitable estoppel is the effect of the conduct of one party on the position of the other party. *See Travelers v. Nationwide*, 244 Md. 401, 414, 224 A.2d 285, 293 (1966). The estopped party is therefore " 'absolutely precluded both at law and in equity, from asserting rights which

might perhaps have otherwise existed ... against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse and who on his part acquires some corresponding right, either of property, of contract, or of remedy.'" *Cunninghame v. Cunninghame,* 364 Md. 266, 289, 772 A.2d 1188, 1201 (2001) (quoting *Knill v. Knill,* 306 Md. 527, 510 A.2d 546 (1986)); *see also* 16B Appleman, *supra,* § 9081, at 491–92 (noting that estoppel "refers to an abatement raised by law of rights and privileges of the insurer where it would be inequitable to permit their assertion. It necessarily implies prejudicial reliance of the insured upon some act, conduct, or nonaction of the insurer."). A party asserting the benefit of an estoppel "must have been misled to his injury and have changed his position for the worse, having believed and relied on the representations of the party sought to be estopped." *Rubinstein v. Jefferson Nat'l Life,* 268 Md. 388, 393, 302 A.2d 49, 52 (1973). Wrongful or unconscionable conduct is generally an element of estoppel, see *Food Fair v. Blumberg,* 234 Md. 521, 532, 200 A.2d 166, 172 (1964), but an estoppel may arise even when there is no intent to mislead, if the actions of one party cause a prejudicial change in the conduct of the other. *Bean v. Steuart Petroleum,* 244 Md. 459, 469, 224 A.2d 295, 301 (1966). Equitable estoppel is comprised of three basic elements: " 'voluntary conduct' or representation, reliance, and detriment." *Cunninghame,* 364 Md. at 289–90, 772 A.2d at 1202. The party arguing for an estoppel bears the burden of proving the facts that create it. *Id.* at 289, 772 A.2d at 1202. Whether an estoppel exists "is *a question of fact* to be determined in each case.'" *Markov v. Markov,* 360 Md. 296, 307, 758 A.2d 75, 81 (2000) (quoting *Travelers,* 244 Md. at 414, 224 A.2d at 292); *see also Allstate v. Reliance,* 141 Md.App. 506, 515, 786 A.2d 27, 33 (2001), *cert. denied,* 368 Md. 526, 796 A.2d 695 (2002) (noting that the question of estoppel is a question of fact because it involves the assessment of conduct by one party and reliance by another).[11]

---

11. This Court has not squarely addressed the question of whether estoppel can operate to expand insurance coverage. *See, e.g., GEICO v.*

Appellants' estoppel argument is without basis, and the trial court reasonably concluded that appellees may review individual claims during the remediation process. Appellants ask this Court to determine whether there is an estoppel, but they point to no evidence to support their argument. As a result, any prejudice or detrimental reliance suffered by the putative class is purely speculative. Appellants retained their documents and have been offered full reimbursement through the remediation programs. Furthermore, any prejudice is dubious because even if claimants lost their medical bills or treatment records, they likely could reconstitute those records by contacting the medical providers. The trial court did not err by not finding that estoppel operated to dispose of individual issues and create commonality.

## IV. Conclusion

PIP insurance claims "tend to be of a highly individualized nature." *Ostrof v. State Farm Mut. Auto. Ins. Co.,* 200 F.R.D. 521, 531 (D.Md.2001). In evaluating each claim, numerous questions, including the following, may arise: Was there an accident? Was the claimant injured? Was the treatment received necessary? Are the expenses reasonable? Are the expenses related to the motor vehicle accident? *See, e.g., O'Sullivan v. Countrywide Home Loans, Inc.,* 319 F.3d 732, 744–45 (5th Cir.2003); *Ostrof,* 200 F.R.D. at 528–29; *Aetna Cas. & Sur. Co. v. Cantrell,* 197 Ga.App. 672, 399 S.E.2d 237, 239 (1990). The commonality requirement, in part, ensures that " 'only those plaintiffs or defendants who can

---

*Medical Services,* 322 Md. 645, 651–52, 589 A.2d 464, 467 (1991) (noting that because Medical Services did not raise the question of estoppel, Court "need not decide whether coverage may ever be extended by estoppel, as opposed to waiver"); *Bower & Kaufman v. Bothwell,* 152 Md. 392, 397, 136 A. 892, 894 (1927) (noting that waiver was inapplicable because waiver would effect "an extension of the [insurance] contract beyond its defined limits" but indicating, *in dicta,* that estoppel may operate to expand insurance coverage by stating that "extension would, at least, we think, require an estoppel, if not a new consideration, to support it"). Because of our resolution of the issues before us, we do not decide whether estoppel may expand insurance coverage under the policy.

advance the same factual and legal arguments may be grouped together as a class.'" *Broussard v. Meineke Disc. Muffler Shops, Inc.,* 155 F.3d 331, 340 (4th Cir.1998) (citations omitted). The trial court reasonably concluded that these cases presented no common questions suitable for class-wide resolution. This was not error. Accordingly, we shall affirm.[12]

---

**12.** GEICO argues that the judgments are not final and appealable because the trial court did not specify an award of monetary relief. Creveling insists that the orders are final judgments because the trial court intended them to be final and appealable. The complaints alleged one count of breach of contract and prayed for monetary relief in the amount of PIP benefits denied on the basis of collateral source payments. The Circuit Court issued one-sentence orders granting summary judgment in favor of appellants, but the orders did not specify awards of damages.

For an appellate court to have jurisdiction over an appeal, there ordinarily must be a final judgment in the trial court. Maryland Code (1974, 2002 Repl.Vol.) § 12–301 of the Courts and Judicial Proceedings Article; *Taha v. Southern,* 367 Md. 564, 567; 790 A.2d 11, 13 (2002). An order that adjudicates fewer than all of the claims in an action or that adjudicates less than an entire claim is not a final judgment, is not appealable, and is subject to revision at any time before entry of a judgment which does adjudicate all claims. *See* Maryland Rule 2–602; *Shenasky v. Gunter,* 339 Md. 636, 638, 664 A.2d 882, 883 (1995). We have stated that "an order entered on the docket pursuant to Rule 2–601, and having the effect of terminating the case in the circuit court, is a final judgment." *Montgomery County v. Revere,* 341 Md. 366, 378, 671 A.2d 1, 7 (1996); *see also Taha,* 367 Md. at 567–68, 790 A.2d at 13; *Ferrell v. Benson,* 352 Md. 2, 5, 720 A.2d 583, 585 (1998).

In these cases, it is clear that the trial court intended to enter summary judgment in favor of appellants in the amounts of their denied PIP claims. The amount of those claims remained undisputed throughout the proceedings. At many points, appellees offered payment for the amount sought in the complaints, plus interest. Appellants' motions for summary judgment argued that there was no factual dispute as to the amount of damages and indicated that appellees' tender represented the desired monetary relief. The amount of damages was not left unresolved for later determination, and the orders entered into the docket had the effect of putting the parties out of the Circuit Court. As such, even though the trial court did not specifically designate monetary awards in the docket entries or the orders, we construe the orders to award the amount claimed by appellants and tendered by appellees— $23.42 for Ferguson–Owens, $557.50 for Pettiford, and $415.65 for Creveling. Because the parties do not dispute the amount of damages, it is appropriate to enter judgment for appellants in those amounts. *See* Md. Rule 8–604(e) (stating that "[i]n reversing or modifying a judgment in whole or in part, the Court may enter an appropriate judgment directly or may order the lower court to do so"); *Ebert v.*

*JUDGMENT ENTERED FOR APPELLANT CREVEL-ING IN THE AMOUNT OF $415.65; JUDGMENT EN-TERED FOR APPELLANT FERGUSON–OWENS IN THE AMOUNT OF $23.42; JUDGMENT ENTERED FOR AP-PELLANT PETTIFORD IN THE AMOUNT OF $557.00. JUDGMENTS DENYING CLASS CERTIFICATION AF-FIRMED. COSTS TO BE DIVIDED EVENLY BETWEEN APPELLANTS AND APPELLEES.*

Chief Judge BELL concurs in the judgment only.

---

*Millers Fire Ins. Co.*, 220 Md. 602, 614, 155 A.2d 484, 490–91 (1959) (noting that "[s]ince the amount of those damages is not disputed, we think it appropriate to enter judgment for the plaintiffs-appellants in the amount agreed to be payable, if the Insurance Company is liable at all").