**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-1559**

ST. PAUL MERCURY INSURANCE COMPANY,

Plaintiff - Appellee,

v.

AMERICAN BANK HOLDINGS, INC.,

Defendant - Appellant,

and

AMIEL CUETO,

Defendant.

------------------------

UNITED POLICYHOLDERS,

Amicus Supporting Appellant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Roger W. Titus, Senior District Judge. (8:09-cv-00961-RWT)

Argued: January 27, 2016      Decided: April 14, 2016

Before TRAXLER, Chief Judge, and WILKINSON and NIEMEYER, Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Chief Judge Traxler and Judge Wilkinson joined.

**ARGUED**: Albert Joseph Mezzanotte, Jr., WHITEFORD, TAYLOR & PRESTON, L.L.P., Baltimore, Maryland, for Appellant. Thomas James Judge, Jr., LOSS, JUDGE & WARD, LLP, Washington, D.C., for Appellee. **ON BRIEF**: Dwight W. Stone, II, WHITEFORD, TAYLOR & PRESTON, L.L.P., Baltimore, Maryland, for Appellant. Brent H. Olson, LOSS, JUDGE & WARD, LLP, Washington, D.C., for Appellee. Lorelie S. Masters, Christopher R. Healy, PERKINS COIE LLP, Washington, D.C.; Amy Bach, Dan Wade, UNITED POLICYHOLDERS, San Francisco, California, for Amicus Curiae.

NIEMEYER, Circuit Judge:

On June 18, 2008, American Bank Holdings, Inc., was served with a complaint and summons that issued from a state court in Belleville, Illinois. Because of an internal oversight, however, American Bank did not respond to the summons, and the court, on July 23, 2008, entered a $98.5 million default judgment against it. Some eight months after receipt of the summons, on February 25, 2009, American Bank notified its insurance company -- St. Paul Mercury Insurance Company -- of the lawsuit, and St. Paul Insurance denied coverage due to the late notice. American Bank was thereafter able to have the default judgment vacated and the lawsuit dismissed, but at an expense of some $1.8 million.

In this action, which St. Paul Insurance filed to obtain a declaratory judgment that it had no duty to pay for American Bank's defense, American Bank filed a counterclaim for a declaratory judgment that it was indeed owed reimbursement for its defense and for damages based on the amount of attorneys fees and costs incurred both in the underlying action and in this action.

On the parties' cross motions for summary judgment, the district court entered judgment for St. Paul Insurance. Among other things, the court concluded that because American Bank did not provide St. Paul Insurance with notice "as soon as

3

practicable," as required by the terms of its insurance policy, and because the late notice caused St. Paul Insurance prejudice, St. Paul Insurance was within its right to deny coverage. We affirm.

I

On June 11, 2008, Amiel Cueto, a disbarred lawyer and convicted felon who was acting pro se, filed an action in the St. Clair County Circuit Court in Belleville, Illinois, against American Bank and 10 other defendants, alleging that they fraudulently failed to fund his $8 million sale of real property to Lester J. Petty and Associates, Inc., causing the deal to collapse. The complaint sought both compensatory and punitive damages. Both American Bank and St. Paul Insurance agree, however, that American Bank, as a holding company, did not engage in any lending business as alleged and that, in any event, it conducted no business in Illinois. Indeed, American Bank, based in Maryland, asserts that it had nothing to do with the Illinois transaction and suggests that the suit was frivolous, if not fraudulent.

The complaint against American Bank and the summons were served on June 18, 2008, on CT Corporation as the agent of American Bank for receiving service of process in Maryland. The next day, CT Corp. transmitted the papers to American Bank's office in Greenbelt, Maryland, addressed to American Bank's CFO,

4

in accordance with the standing instructions that it had received from American Bank. As of that time, however, American Bank's CFO had left the employ of American Bank. An officer of an American Bank subsidiary subsequently came across the papers and forwarded them to American Bank's local lawyer in late July 2008. But the lawyer claimed that he never received them. When American Bank failed to respond to the Cueto suit, Cueto obtained a default judgment on July 23, 2008, in the amount of $7,390,855.10 in compensatory damages, $66,517,695.90 in punitive damages, and $24,636,183.65 in attorneys fees, for a total of $98,544,734.65.

More than six months later, Cueto began efforts to collect on the default judgment in Maryland and elsewhere, sending the relevant court papers to American Bank. American Bank received them around February 13, 2009, and thereafter notified its insurance broker, providing the broker with copies of the papers. The broker in turn notified St. Paul Insurance by email on February 25, 2009. This was the first point at which St. Paul Insurance had any knowledge of the Cueto lawsuit, the default judgment, or the collection efforts. St. Paul Insurance acknowledged receiving the papers on February 26, 2009, and explained that it "retain[ed] the right to raise any and all coverage issues and to assert appropriate coverage defenses that may apply during the course of our investigation."

5

American Bank's general counsel Erik Bolog called St. Paul Insurance's claims counsel, Christopher Nelson, the next day, on February 27, 2009. During the telephone call, Bolog asked Nelson "if we were covered for this," and Nelson responded "yes." During the ensuing investigation of the claim and coverage for it, Nelson prepared draft letters dated March 13 and March 16, 2009, stating St. Paul Insurance's position and confirming that the Cueto complaint "involve[d] a Lending Act," for which the policy provides coverage, but "reserv[ing] the right to deny coverage due to late notice." On April 15, 2009, St. Paul Insurance formally notified American Bank that St. Paul Insurance was denying coverage due to a lack of timely notice. The letter stated:

> I have reviewed the Lawsuit and the Policy in order to determine whether coverage is afforded. As we have discussed, I regret to inform you that [St. Paul Insurance] must decline coverage for this matter. As you know, the Policy provides:
>
>> The Insureds shall, as a condition precedent to their rights under this Policy, give to the Insurer written notice of any Claim made against the Insureds as soon as practicable, but in no event later than: (a) sixty (60) days after expiration of the Policy Year in which the Claim was first made . . . .
>
> * * *
>
> Clearly, notice was not given to [St. Paul Insurance] within the time provided for in the Policy and [St. Paul Insurance] therefore must decline coverage on this basis. In addition to the Bank's failure to comply with the Policy's condition precedent to

6

coverage, the Bank's action, or inaction, has prejudiced [St. Paul Insurance].

Before even notifying St. Paul Insurance of the Cueto suit, American Bank retained the law firm of Bryan Cave in St. Louis, Missouri, which filed unsuccessful motions in the Illinois state court to vacate the default judgment and dismiss the Cueto lawsuit. After American Bank then retained the Chicago firm of Sidley Austin to oversee appeals, an Illinois state appellate court held that the trial court did not have personal jurisdiction over American Bank and accordingly dismissed the Cueto suit, a ruling that Cueto did not appeal further. American Bank estimated that it spent approximately $1.8 million in its efforts to resist enforcement of the default judgment and have the Cueto lawsuit dismissed.

During the course of the proceedings in Illinois, on June 1, 2009, Cueto sent a demand letter to American Bank, seeking a settlement of his claims in exchange for payment of $10 million. American Bank passed the letter on to St. Paul Insurance and demanded that St. Paul Insurance settle the claim for an amount "within the policy limits." St. Paul Insurance, however, repeated its denial of coverage. American Bank never accepted Cueto's settlement, instead pursuing its efforts to have the default judgment overturned in court.

St. Paul Insurance commenced this action for a declaratory judgment that it had no duty to provide coverage to American Bank because American Bank failed to provide it with timely notice of the Cueto suit, as required by the policy. By an amended complaint, it also contended that American Bank breached its duty under the policy to defend the Cueto suit upon being served with it. American Bank filed a counterclaim for a declaratory judgment that it indeed had coverage under the policy and for damages for reimbursement of its attorneys fees and costs. In its counterclaim, American Bank advanced theories of coverage based on waiver and estoppel. It also asserted a statutory claim under Maryland law for a lack of good faith in denying insurance coverage.

On the parties' cross motions for summary judgment, the district court granted judgment to St. Paul Insurance and denied American Bank's motion. It concluded that American Bank had provided late notice of Cueto's suit and that St. Paul Insurance had suffered prejudice as a result. It also concluded that American Bank breached its duty timely to defend the suit, also resulting in prejudice to St. Paul Insurance. Finally, it rejected American Bank's claims of coverage based on waiver and estoppel and its claim based on St. Paul Insurance's lack of good faith in denying coverage.

From the district court's judgment, American Bank filed this appeal, contending (1) that it provided timely notice to St. Paul Insurance; (2) that it complied with its duty to defend; and (3) that material factual disputes remain with respect to its waiver, estoppel, and bad faith claims, precluding the entry of summary judgment against it.

II

American Bank contends first that, contrary to the district court's holding, it provided St. Paul Insurance with timely notice of the suit because it provided St. Paul Insurance with notice within days of when it first learned of the suit around February 13, 2009. As American Bank argues, its "obligation to notify St. Paul was not triggered until it had actual knowledge of the Cueto action, shortly after February 12, 2009. Measured from that time, [its] notice was not late." (Emphasis added). It argues further that the policy does not support the district court's ruling that "constructive notice via service of process on the insured's registered agent [on June 18, 2008] constitute[d] actual notice for purposes of triggering [its] obligation to notify St. Paul of a claim." Finally, it reasons that "common sense dictates that there can be no obligation to notify St. Paul of a claim until the insured has actual knowledge of it."

9

In making this lack-of-actual-notice argument, American Bank fails to provide textual support based on the terms of the St. Paul Insurance policy. Indeed, the term "actual knowledge" is foreign to the notice provision contained in the policy. The policy provision reads:

> The Insureds shall, as a condition precedent to their rights under this Policy, give to the Insurer <u>written notice of any Claim made against the Insureds</u> as soon as practicable, but in no event later than: (a) sixty (60) days after expiration of the Policy Year in which the Claim was first made . . . .

(Emphasis added). The term "Claim" as used in the provision is defined to include, as relevant here, "a civil proceeding against any Insured commenced by the <u>service of a complaint</u> or similar pleading." (Emphasis added). Thus, according to the policy, the requirement to give notice is triggered not by "actual knowledge" of a claim, but by "service of a complaint" upon the insured. The two, however, are effectively the same in the circumstances presented in this case.

Here, there is no dispute that the Cueto complaint was served on CT Corp. on June 18, 2008, and that CT Corp. was American Bank's designated resident agent for receiving service of process. Under Maryland law, every corporation must designate a resident agent to receive service of process. <u>See</u> Md. Code Ann., Corps. & Ass'ns § 2-108(a)(2). Maryland law also provides that "[s]ervice of process on the resident agent . . .

10

constitutes effective service of process . . . on the corporation." Id. § 1-401(a). Thus, service on CT Corp. on June 18, 2008, effected service on American Bank, triggering American Bank's duty to notify St. Paul Insurance "as soon as practicable" thereafter.

While the insurance policy does not use the term "actual knowledge" to trigger the notice requirement, American Bank was nonetheless also imputed, as a matter of law, with actual knowledge as of June 18, 2008, under established principles of Maryland agency law. Because a corporation is a fiction that can have knowledge only through its agents, knowledge of an agent acquired within the scope of the agency relationship is imputable to the corporation. See Plitt v. Kellam, 160 A.2d 615, 619 n.4 (Md. 1960) ("The knowledge [of the agent that is] imputed to the principal is considered actual knowledge" (emphasis added)); see also Martin Marietta Corp. v. Gould, Inc., 70 F.3d 768, 773 (4th Cir. 1995) ("Thus, under the rule of imputation the principal is chargeable with the knowledge the agent has acquired, whether the agent communicates it or not" (applying Maryland law)). As such, on June 18, 2008, when CT Corp. was served with process in the Cueto case -- process that was physically transmitted to American Bank the next day -- American Bank, as a corporation, had "actual knowledge" of the lawsuit. Thus, while we reject the premise of American Bank's

11

argument that it was required by the policy to give notice only after it received "actual knowledge" of the suit, we nonetheless conclude that, as a matter of law, American Bank received actual knowledge of the suit on June 18, 2008, when its authorized agent, CT Corp., was served with process.

American Bank seeks to avoid these conclusions by claiming that the suit papers, which were addressed and delivered to the desk of its CFO, were not effectively served on it because, as of that time, its CFO had departed from its employ. But this argument overlooks the fact that the papers were delivered to American Bank by CT Corp. in the manner that American Bank had previously instructed. The most that American Bank's argument accomplishes is to reveal the fact that the suit papers were not routed internally so as to get promptly into the hands of its counsel. As the district court found, "through a variety of corporate screw-ups, significant suit papers that should have gotten immediate attention didn't." But internal "corporate screw-ups" provide no basis to excuse American Bank's failure to give St. Paul Insurance timely notice of the Cueto suit after being validly served with process.

Alternatively, American Bank contends that, in providing St. Paul Insurance with notice on February 25, 2009, it effectively satisfied the policy's notice provision because the policy authorizes a notice either "as soon as practicable" or by

12

60 days after the expiration of the policy year on October 1, 2008, i.e., by November 29, 2008. Focusing on the second option, it argues that its failure to satisfy the November 29 deadline was of no legal moment because, by then, the July 2008 default judgment had already been entered, making the difference between a "timely" notice by November 29, 2008, and notice on February 25, 2009, insignificant, as St. Paul Insurance could not have suffered prejudice, as required by Maryland law, if its position would have been the same on November 29, 2008, and February 25, 2009.

This argument, however, rests on a misreading of the notice provision contained in the policy. While American Bank suggests that the notice provision gives it two alternative deadlines for providing notice -- either "as soon as practicable" or "sixty (60) days after expiration of the Policy Year" -- this interpretation is not supported by the text. The notice provision reads, "The Insureds shall . . . give to the Insurer written notice of any Claim . . . as soon as practicable, but in no event later than . . . sixty (60) days after expiration of the Policy Year." (Emphasis added). The policy's notice provision thus defines a single deadline for providing notice, i.e., "as soon as practicable," and the required notice can never be later than 60 days after the expiration of the policy year. This is indicated by the language, "but in no event later

13

than." In short, American Bank had a continuing duty to provide notice <u>as soon as practicable</u>, so long as the as-soon-as-practicable notice did not come later than 60 days after the policy term, and it failed to comply with that duty here.

American Bank argues against this interpretation further by contending that St. Paul Insurance never took the single-deadline position as its own until its reply brief at the summary judgment stage, suggesting that St. Paul Insurance forfeited the argument. The record, however, does not support American Bank's assertion. In its complaint, St. Paul Insurance quoted the policy provision requiring notice as soon as practicable. It then alleged that, because that provision was not complied with, the condition precedent to coverage was not satisfied. And again, in its opening brief in support of summary judgment, St. Paul Insurance quoted the policy provision and argued, "Had St. Paul been provided with notice <u>as soon as practicable</u>, it could have ensured that defense counsel was properly retained and timely filed an appropriate motion to dismiss for lack of personal jurisdiction." (Emphasis added). Then, during oral argument before the district court, counsel for St. Paul Insurance again stated:

> With respect to late notice, that's the second duty that was breached by [American Bank]. Under the notice provision, <u>they have to provide notice as soon as practicable</u>. And under case law back in 2009 and case law now, the as-soon-as-practicable provision has

14

> always, generally in most states, [required] proof of prejudice, whereas the latter part of the notice provision, where it says notice within sixty days of the expiration of the policy has been considered a claims-made provision that has to be enforced strictly. <u>[American Bank] did not provide notice as soon as practicable</u>.

(Emphasis added). In ruling on the motions for summary judgment, moreover, the district court relied only on the "as soon as practicable" language to define the notice requirement, analyzing it in conjunction with American Bank's contractual duty to defend. It concluded that "as soon as practicable" meant in sufficient time to file a response in court on behalf of American Bank "within the time set by the Illinois court system for responding to lawsuits," in this case, 30 days after service. American Bank's argument that St. Paul Insurance forfeited its argument for a single deadline simply cannot be maintained.

In any event, notwithstanding American Bank's efforts to constrict St. Paul Insurance's position with its forfeiture argument and thereby limit the scope of our review, our ultimate task is to review the district court's <u>judgment</u> and the relevant policy <u>language</u> on which the judgment was based. The district court held that American Bank failed to provide notice as soon as practicable, and the policy supports that ruling, describing, as we hold, a single as-soon-as-practicable deadline for providing notice, so long as the notice is not more than 60 days

15

after the policy term. The defining characteristic of that notice obligation is notice given "as soon as practicable."

In sum, when American Bank was served with the complaint and summons in the Cueto suit on June 18, 2008, its duty to notify St. Paul Insurance was triggered. Yet, it did not provide St. Paul Insurance with notice until eight months later, on February 25, 2009. No one can credibly argue that that lapse of time was "as soon as practicable." As a result, American Bank's notice to St. Paul Insurance was not timely.

American Bank maintains correctly, however, that even if it failed to provide notice as soon as practicable, Maryland law still requires that St. Paul Insurance "establish[] by a preponderance of the evidence that the lack of . . . notice has resulted in <u>actual prejudice</u> to [it]." Md. Code Ann., Ins. § 19-110 (emphasis added). The Maryland Court of Appeals has recognized that "[i]t is very difficult to fashion a workable 'one size fits all' standard" to define actual prejudice. <u>Allstate Ins. Co. v. State Farm Mut. Auto. Ins. Co.</u>, 767 A.2d 831, 841 (Md. 2001). But under the facts before it, which involved an insured's lack of cooperation rather than late notice, the Maryland Court of Appeals interpreted § 19-110's prejudice requirement to hold that the insurer suffered actual prejudice when "there was a credible defense to be presented and

16

. . . [the insured's] non-cooperation precluded State Farm from even presenting that defense." Id. at 844.

In this case, the district court concluded that American Bank's late notice precluded St. Paul Insurance from exercising its contractual rights, as stated in the policy, to participate in American Bank's defense and advance credible defense strategies before the default judgment was entered. It explained:

> Had the insured not breached its obligation [to give timely notice and] to defend, this would have been a relatively trivial matter [based on a lack of personal jurisdiction] and, by any standards -- with apologies to Potter Stewart, I know it when I see it -- this is prejudice.

Even though American Bank had the contractual duty to provide its own defense, for which it would, under the policy, be reimbursed by St. Paul Insurance, the policy nonetheless provides that St. Paul Insurance "shall have the right and shall be given the opportunity to effectively associate with, and shall be consulted in advance by, [American Bank] regarding: (a) the selection of appropriate defense counsel; (b) substantive defense strategies, including decisions regarding the filing and content of substantive motions; and (c) settlement negotiations." (Emphasis added). American Bank's late notice denied St. Paul Insurance the opportunity to participate in the selection of counsel, to speak with counsel,

17

and to discuss credible defense strategies for dismissing Cueto's suit before the default judgment. St. Paul Insurance was also denied the opportunity to involve itself in considering the possibility of settlement negotiations with Cueto prior to the default judgment and prior to the expenditure of $1.8 million incurred by American Bank to vacate it. When a late notice precludes an insurer from exercising meaningful contractual rights provided to it by the policy -- in this case, all the contractual rights -- we agree with the district court that the insurer has suffered actual prejudice.

Accordingly, we affirm the district court's judgment concluding that St. Paul Insurance was entitled, by reason of late notice, to deny insurance coverage to American Bank for the Cueto suit. Because we conclude that American Bank's notice was untimely and caused prejudice, we need not address St. Paul Insurance's alternative argument that American Bank should also be denied coverage because it breached its contractual duty timely to defend the Cueto action.

### III

American Bank also contends that St. Paul Insurance waived or is estopped from asserting its late-notice defense to coverage and that the district court erred in granting St. Paul Insurance summary judgment with respect to these arguments. It

18

relies mainly on a telephone conversation initiated by its general counsel, Erik Bolog, with St. Paul Insurance's claims counsel, Christopher Nelson, on February 27, 2009, during which Nelson stated, according to American Bank, that insurance coverage existed for the Cueto suit. American Bank claims that it relied on this representation "in deciding to continue litigating the Cueto Action, whereas it would have pursued early settlement if St. Paul had instead declined coverage."

The district court, relying on the absence of evidence showing that American Bank changed its position, rejected American Bank's arguments, stating, "I don't see any basis on this summary judgment record, with all of the inferences given in favor of American Bank Holdings, that there was any change of position in reliance upon that or any prejudice to American Bank Holdings to the extent that I credit the notion that someone said, 'You're covered,' and then changed their mind." We agree with the court's conclusion for multiple reasons.

With respect to waiver, the record facts do not support any finding of an intentional waiver by St. Paul Insurance of its late-notice defense. The record shows that American Bank's insurance broker forwarded the Cueto suit papers by email to St. Paul Insurance on February 25, 2009, telling St. Paul Insurance that American Bank was "no[t] involved or related to any of the entities or individuals that are listed." The broker also

19

advised St. Paul Insurance that American Bank had hired the law firm of Bryan Cave in St. Louis to represent it. Responding the next day, February 26, St. Paul Insurance acknowledged receipt of the email, stating that it "retain[ed] the right to raise any and all coverage issues and to assert appropriate coverage defenses that may apply during the course of our investigation."

On the following day, February 27, 2009, American Bank's general counsel Bolog called St. Paul Insurance's claims counsel Nelson to discuss the suit. As of that time, American Bank had already retained Bryan Cave to represent it in the Cueto suit, and Bryan Cave had already filed a motion on American Bank's behalf to vacate the $98.5 million default judgment. Bolog stated in his deposition that he called because of the big problem he had, especially because the judgment was so large and the suit was so frivolous. In this context, he asked whether American Bank was "covered for this," and Nelson responded "yes." Taken in context, this statement related to whether the type of claim described by Bolog would fall under the policy and did not respond or even relate to a late-notice question. The conversation, according to Bolog, went as follows:

> My recollection of the call with Mr. Nelson was that <u>I called him and told him we had a problem. It was a 98 million-dollar judgment against us.</u>
>
> <u>The judgment was in my mind disturbing for numerous factors, most importantly being that [American Bank] had never done any business whatsoever in Illinois,</u>

20

had no relationship whatsoever to the transaction, which was part of the underlying claim, that somehow a by now I know convicted felon who had done 7 and a half years for fraud and other related issues upon a court had obtained a 98 million-dollar judgment against [American Bank] for something [American Bank] had no involvement in nor did [American Bank's subsidiary] for that matter have any involvement in, that the judgment on its face was certainly corrupt, that somehow 66 million dollars in punitive damages had been awarded into a trust on behalf of St. Clair County, and this judge allowed this person who had been disbarred and spent 7 and a half years in prison for frauds upon the court to be the trustee, to be able to use those funds for whatever purpose he so chose, including settling the compensatory part of the claim, and then awarded 30 some-odd million dollars in legal fees to a law firm that entered its appearance the day after the judgment had been entered. I found all that to be disturbing to say the least.

Then I've learned of course that the plaintiff was a former trial lawyer who was a convicted felon. I advised him that this felon's brother was the chief judge of this court, that the associate judge, Gleeeson, who was the judge that signed this order, somehow needed the approval of the brother to become a tenured judge, and that from all accounts from newspapers and all the information I could gather, St. Clair County, Illinois, was known as a judicial cesspool and that questionable judgments and verdicts happened there on a regular basis.

I asked him if we were covered for this. He said, yes. He did not equivocate. He did not say, we're taking a look at it. I have no recollection of any type of ambivalence in his position.

(Emphasis added). Remarkably, this conversation did not include any discussion of notice, nor did it indicate that St. Paul Insurance was waiving any late-notice defense. Indeed, the record makes clear that St. Paul Insurance intended to preserve a late-notice defense, as further evidenced during the next two

21

weeks, when it drafted at least two letters stating that as its position.   In each draft, it recited the facts and then explained, "Although it appears that the Claim involves a Lending Act [for which Lender Liability Coverage was afforded by the policy], it is not clear whether notice was given to [St. Paul Insurance] as soon as practicable.   [St. Paul Insurance] reserves the right to deny coverage due to late notice."   On April 15, 2009, at the conclusion of its investigation, St. Paul Insurance sent American Bank a letter formally denying coverage for a lack of timely notice.

In this context, there was no waiver of the late-notice defense.   Maryland Law requires that waiver be "an actual intention to relinquish an existing right, benefit, or advantage, with knowledge, either actual or constructive, of its existence, or such conduct as to warrant an inference of such intention to relinquish."   Creveling v. GEICO, 828 A.2d 229, 243 (Md. 2003) (emphasis added) (internal quotation marks omitted) (quoting GEICO v. Grp. Hosp. Med. Servs., 589 A.2d 464, 466 (Md. 1991)).

If Bolog's testimony is accurate -- and, at this stage we assume that it is -- it appears that Nelson's affirmation of coverage was referring to no more than the nature of the claim as a Lending Act and the Lender Liability Coverage provided by the policy, as noted in Nelson's draft letters.   In no manner

22

could Nelson's response be construed as an actual intention to waive the late-notice defense. And there is no basis to infer waiver from Nelson's conduct. Moreover, because St. Paul Insurance had the suit papers for only a day, it would not be reasonable to conclude that it had conducted an investigation and intentionally decided in the conversation on February 27, 2009, to waive any late-notice defense.

American Bank also relies on a telephone conversation on March 16, 2009, in which St. Paul Insurance's claims counsel allegedly told American Bank representatives that American Bank could not settle the Cueto suit <u>without St. Paul Insurance's consent</u>, allegedly implying coverage. But, again, that conversation did not relate to the late-notice issue, nor did it in any way indicate a waiver of the notice requirement. To the contrary, at the time the statement was made, St. Paul Insurance was still considering whether <u>to provide coverage with a reservation of rights to deny coverage due to late notice</u>, as indicated in the draft letters dated March 13 and March 16, 2009. While St. Paul Insurance ultimately decided to deny coverage, the record facts do not, to any extent, support American Bank's claim that this March 16 conversation manifested St. Paul Insurance's intent to waive its right to assert a late-notice defense to coverage.

The same record facts also require rejection of American Bank's estoppel argument. Under Maryland law, "[o]ne asserting the benefit of an estoppel must have been misled to his injury and <u>have changed his position for the worse</u>." <u>Rubinstein v. Jefferson Nat'l Life Ins. Co.</u>, 302 A.2d 49, 52 (Md. 1973) (emphasis added). We again see no evidence in the record that would permit a reasonable jury to conclude that American Bank actually changed its position for the worse in reliance on its conversations with St. Paul Insurance representatives.

American Bank contends that, had it known that St. Paul Insurance would deny coverage in April 2009, it would have sought a settlement, mediation, or other resolution of the Cueto suit in February or March 2009. But no reasonable jury could credit such claims. Indeed, Bolog's conversation with Nelson and American Bank's early retention of Bryan Cave suggest that, based on its assessment that the suit was frivolous and apparently corrupt, American Bank was <u>not</u> thinking of settlement or an alternative dispute resolution at all. Moreover, there is no evidence that if it had sought a settlement, it would have received a more favorable outcome than it actually received -- <u>i.e.</u>, vacating the default judgment and dismissing the case at a cost of some $1.8 million. In fact, the only evidence of settlement was Cueto's later offer to settle for $10 million, which American Bank refused to accept. In short, American

24

Bank's estoppel argument amounts to pure speculation. See Creveling, 828 A.2d at 247 (refusing to find an estoppel when the "prejudice or detrimental reliance suffered . . . [was] purely speculative").

We therefore conclude that the district court properly rejected American Bank's waiver and estoppel arguments.

IV

Finally, American Bank contends that St. Paul Insurance failed to act in good faith in denying coverage for the Cueto claim, in violation of Maryland statutory law. See Md. Code Ann., Cts. & Jud. Proc. § 3-1701. We conclude that this claim was properly dismissed.

Section 3-1701(d)(1)(i) provides that the statutory claim for failure to act in good faith applies to civil actions in which the insured seeks a determination of whether coverage actually exists under an insurance policy, and § 3-1701(e) requires a finding "in favor of the insured" on that coverage question. See Md. Code Ann., Cts. & Jud. Proc. §§ 3-1701(d), 3-1701(e). In view of our ruling that the district court did not err in concluding that American Bank failed to satisfy a condition precedent of coverage by failing to give timely notice, American Bank cannot satisfy the statutory requirement under § 3-1701(e) that there be a finding in favor of the

25

insured <u>that coverage actually existed</u>.  We therefore affirm the district court's summary judgment on this claim.

*   *   *

For the reasons given, the judgment of the district court is

<u>AFFIRMED</u>.